UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAZIM Z. ACAR,

        Plaintiff,

    v.

United States of America,

        Defendant.

_____/

No. C 06-0344 PJH

**ORDER GRANTING
SUMMARY JUDGMENT**

Defendant's motion for summary judgment came on for hearing before this court on August 2, 2006.  Plaintiff, Kazim Z. Acar ("plaintiff"), appeared pro se.  Defendant, the United States of America ("defendant"), appeared through its counsel, Jay Weill.[1]  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This case arises under the federal tax laws.  Plaintiff, who alleges that he is a professional in the financial services industry and was a securities trader during the relevant time period at issue here, seeks review of a decision issued by the Commissioner of the Internal Revenue Service ("IRS"), disallowing certain losses claimed by plaintiff for taxable year 1999.  See generally Disallowance of Trading Losses for Tax Year 1999 ("Complaint").

Specifically, plaintiff alleges that in tax year 1999, he sustained losses from his

_____

[1]    Mr. Weill supervised oral argument on the instant motion, which was ably delivered by Katherine Wong, a temporary law clerk in the U.S. Attorney's tax division.

United States District Court

For the Northern District of California

trading activities, and that he reported these losses as capital losses on his regular 1999 income tax return.  See id. at ¶ 5.  Subsequently, plaintiff filed an amended 1999 tax return, in which he sought to make a "mark to market election" pursuant to IRS Code § 475(f), which election would allow plaintiff to report the trading losses as ordinary losses rather than capital losses, and claim an amended refund of $46,396.  See id. at ¶¶ 6-7.  Plaintiff also claimed a portion of the trading losses as net operating loss carry-forward on his 2001 tax return.  See id. at ¶ 8.

The IRS audited plaintiff's amended 1999 tax return (as well as an amended 2000 tax return he filed) and disputed plaintiff's claimed refund.  The parties litigated the matters before the Commissioner of Internal Revenue appeals board, who subsequently partially disallowed plaintiff's claim for a refund for taxable year 1999 (and denied in full plaintiff's claim for a refund for taxable year 2000).  See Complaint, ¶ 9.  The Commissioner also disallowed all net operating carry-forward losses for years after 2001.  Id. at ¶ 10.

Plaintiff's complaint appeals from the Commissioner's appeals board decision, and seeks an order allowing plaintiff to claim as ordinary losses the trading losses he incurred for taxable year 1999, and to carry-forward those losses as ordinary losses for tax years following 2002.[2]  Id. at ¶ 17.

Defendant moves for summary judgment on plaintiff's complaint in its entirety.

**DISCUSSION**

A.    Legal Standard

The legal standard for summary judgment in a tax case is no different than in an ordinary civil case.  Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FRCP 56(c).  Material facts are those which may affect the

---

[2]    Plaintiff appealed the Commissioner's decision with respect to his 2000 tax return to the Tax Court.  Prior to trial, however, the IRS and Acar reached a settlement, which is set forth in a Closing Agreement, see Opposition Brief at Ex. 4.

1    outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

2    dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

3    return a verdict for the nonmoving party.  Id.  The court must view the facts in the light most

4    favorable to the non-moving party and give it the benefit of all reasonable inferences to be

5    drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

6    587 (1986).

7            B.      Analysis

8            Resolution of the instant motion rests on determination of three issues: (1) whether

9    plaintiff is a trader of securities for purposes of I.R.C. § 475(f); (2) if so, whether plaintiff

10   made a timely and valid mark to market election; and (3) if not, whether plaintiff qualifies for

11   a time extension in which to make a valid election pursuant to Treasury Regulation section

12   301.9100-3.

13                  1.      Whether plaintiff is a trader of securities

14           Internal Revenue Code § 475(f), which is codified at 26 U.S.C § 475(f), applies to

15   traders of securities and allows such qualified persons to make a mark to market election in

16   their method of accounting for tax purposes, which in turn allows them to account for

17   trading losses as ordinary losses.  Plaintiff claims that he is a trader of securities for

18   purposes of section 475(f), and may benefit from the mark to market election that is

19   provided for in the statute.  Defendant challenges this contention.

20           The parties generally agree on the standards that the court must employ in

21   determining whether plaintiff can be qualified as a trader in securities.  Those standards

22   were helpfully set forth by the U.S. Tax Court in Chen v. Comm'r of Internal Revenue, 2004

23   WL 1194625 (U.S. Tax Court 2004).  The Chen court held that, in determining whether an

24   individual who manages his own investments is a trader, "relevant considerations are the

25   taxpayer's investment intent, the nature of the income to be derived from the activity, and

26   the frequency, extent, and regularity of the taxpayer's securities transactions."  See 2004

27   WL 1194625 at *3; see also Moller v. United States, 721 F.2d 810, 813 (Fed. Cir. 1983).

28

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    The taxpayer's trading activity must be "substantial," and it must be "frequent, regular, and

2    continuous to be considered part of a trade or business."  See 2004 WL 1194625 at *3.  In

3    Chen, however, the taxpayer did not qualify as a trader of securities because his trading

4    activity was continuous for only one portion of the taxable year, and did not constitute his

5    sole or primary income-producing activity.  See id. at *4.

6         Here, plaintiff argues that he meets all the criteria set forth in Chen and in Moller.

7    He has testified that he devoted 6 to 8 hours a day in his trading activities, nearly every

8    day, and that his average number of trades for the year 1999 amounted to approximately

9    twice a day for the twelve month period.  See Declaration of Kazim Acar in Support of

10   Opposition to Motion for Summary Judgment ("Acar Decl."), ¶¶ 2, 4.  In opposition,

11   defendant contends that average trades is insufficient, and that if the court scrutinizes the

12   actual trades made by plaintiff in 1999, the court will note that plaintiff's trades occurred on

13   less than half the days of each month, and did not take place at all during the months of

14   June, July and August.  See Declaration of Jay Weill ("Weill Decl."), Ex. 6 to the deposition

15   of Kazim Acar attached thereto.  Defendant further points out that plaintiff testified that his

16   primary source of income for 1999 – and subsequent years – was his life insurance and

17   mutual fund sales business, and even expressly stated as such on his 1999 tax returns.

18   See Weill Decl., deposition of Kazim Acar attached thereto at 12:7-12:25; Ex. 1 attached

19   thereto.

20        On the whole, the court finds that plaintiff has sufficiently proven the existence of a

21   material disputed fact on the issue whether he was a trader of securities for tax year 1999.

22   Although, as defendant correctly notes, plaintiff's own statements to the contrary as

23   contained in his 1999 tax return are probative of plaintiff's income and intent for purposes of

24   this inquiry, plaintiff's testimony regarding the duration, frequency, and extent of his trading

25   activities is sufficient to create a disputed fact on the issue.

26        Accordingly, were this issue the only one that needed to be considered in ruling on

27   the instant motion, the court would find that plaintiff had made the requisite showing

28

                                          4

1   needed to defeat the summary judgment motion.  For the reasons expressed below in

2   conjunction with the remaining issues, however, defendant ultimately prevails.

3                   2.      Whether a timely mark to market election was made

4         Even assuming that plaintiff were able to persuasively demonstrate at trial that he

5   qualified as a trader in securities for tax year 1999, that is only the beginning of the inquiry.

6   The court would still be required to determine whether plaintiff made a valid mark to market

7   election pursuant to section 475(f).  It is undisputed that he did not.

8         The procedure for making the mark to market election is set forth in Rev. Proc. 99-

9   17 and is undisputed by the parties.  See Defendant's Notice of Motion for Summary

10  Judgment and Memorandum in Support ("Def. MSJ"), Ex. A.  The provision requires that a

11  taxpayer file a statement electing the mark to market accounting method no later than the

12  due date for the federal income tax return for the year immediately preceding the election

13  year.  See id. at § 5.03.  Then, in order to obtain consent for the election, the taxpayer must

14  attach a Form 3115 to the timely filed, original federal income tax return for the year of the

15  election.

16        Applied here, this would mean that plaintiff was required to file his statement of

17  election no later than April 15, 1999 (the due date for plaintiff's 1998 tax return), and to file

18  Form 3115 on April 15, 2000 (the due date for plaintiff's 1999 tax return).  Yet it is

19  undisputed that plaintiff did not file his statement of election on the due date for his 1998

20  tax return as required, but instead filed it three years later, with his amended 1999 return in

21  2002.  See Weill Decl., deposition of Kazim Acar attached thereto at 32-35.  Moreover,

22  plaintiff never filed his Form 3115, either with his original or amended 1999 tax returns.

23  See id. at Ex. 2 attached thereto.

24        Accordingly, the court concludes that plaintiff did not make a timely mark to market

25  election, as required by Rev. Proc. 99-17.

26

27

28

5

United States District Court

For the Northern District of California

3.       Whether plaintiff qualifies for a time extension pursuant to Treasury

Regulation § 301.9100-3

In the event the court, as it has just done, finds that plaintiff has not made a timely

and therefore valid mark to market election, plaintiff argues that the court should

retroactively grant him the right to file his mark to market election, under a time extension

pursuant to Treasury Regulation § 301.9100-3.  See 26 C.F.R. § 301.9100-3.

Vines v. Comm'r of Internal Revenue, 2006 WL 1280960 (U.S. Tax Ct. 2006), is the

controlling case with respect to this issue.  The Vines court had occasion to consider

application of the above regulation to a similar situation in which the taxpayer requested

that he be allowed an extension of time to file his mark to market election, after having

missed the deadline in which to do so.  The Vines court enunciated the following relevant

principles: generally speaking, the Commissioner must grant relief to a taxpayer pursuant

to T.R. § 301.9100-3, if (1) the taxpayer has acted reasonably and in good faith, and (2) if

the interests of the government will not be prejudiced by granting relief.  Under the

regulations, a taxpayer can be deemed to have acted reasonably and in good faith if he

satisfies one of the following five criteria: (1) he made his request for an extension of time

before the failure to make the section 475(f) election was discovered by the IRS; (2) the

taxpayer failed to make the election because of intervening events beyond the taxpayer's

control; (3) the taxpayer failed to make the election because, after exercising reasonable

diligence, the taxpayer was unaware of the necessity for the election; (4) the taxpayer

reasonably relied on the written advice of the IRS; or (5) the taxpayer reasonably relied on

a qualified tax professional.  See Vines, 2006 WL 1280960 at * 8.

The Vines court noted, however, that three exceptions exist to the general rule that a

taxpayer may be granted an extension of time in the event he proves he has acted in

accordance with the above.  Under these three exceptions, a taxpayer will be deemed *not*

to have acted reasonably and in good faith if: (1) he seeks to alter a return position for

which an accuracy-related penalty has been or could be imposed under section 6662 at the

6

United States District Court
For the Northern District of California

1    time the taxpayer requests relief; (2) the taxpayer was informed in all material respects of

2    the required election and related tax consequences, but chose not to file the election; and

3    (3) the taxpayer uses hindsight in requesting relief – i.e., the IRS will not grant relief if

4    specific facts have changed since the due date for making the election that make the

5    election advantageous to a taxpayer.  See id. at *9.

6         In Vines, the court extended the deadline by which the taxpayer could make his

7    section 475(f) election, finding that he had acted reasonably and in good faith, and finding

8    no prejudice to the government, as a result of the taxpayer's belated election request.  The

9    taxpayer there filed his election request in the year in which it should have been filed, only

10   months after the due date, with no trading in the interim, and with no tax liability that stood

11   to be diminished as a result of the late filing.  See id. at *10.  The Vines court, however,

12   contrasted these facts with Lehrer v. Comm'r of Internal Revenue, 2005 WL 1607743 (U.S.

13   Tax Ct. 2005).  In Lehrer, while the court did not consider T.R. § 301.9100-3 specifically, it

14   held that the taxpayers' attempt to claim the mark to market election through an amended

15   tax return three years after the original election due date was insufficient.  See id.  The

16   Vines court held that the taxpayers in Lehrer were the "classic example of taxpayers who

17   seek to use the benefit of hindsight," since they sought to retroactively convert their capital

18   losses into ordinary losses several years later, with continued trading in the interim, "in

19   order to escape a deficiency and a section 6662 accuracy-related penalty."  See Vines,

20   2006 WL 1280960 at * 10.

21        Here, the undisputed facts are more similar to Lehrer.  Plaintiff missed the deadline

22   for filing his election by 3 years, and he admits in his deposition testimony that he only

23   chose to file the election because he was doing taxes in 2002, and then "noticed that [he]

24   could write off [his earlier] losses as a trader."  See Weill Decl., deposition of Kazim Acar

25   attached thereto at 35.  In the meantime, between 1999 and 2002, plaintiff had continued to

26   accrue ongoing losses as a result of his trading.  See id. at 20-21, 50-51.  In other words,

27   plaintiff learned after the fact that he could apply a mark to market election to treat his prior

28

United States District Court

For the Northern District of California

1   (and continuing) losses as ordinary losses, rather than having his losses capped at the

2   standard limits applicable to capital losses.  As in <u>Lehrer</u>, this seems the classic definition

3   of "hindsight."

4          Moreover, as defendant points out, plaintiff has not at any rate submitted any facts

5   establishing that he would fall in one of the five subcategories listed under T.R. § 301.9100-

6   3 as presumptive evidence of good faith.  He claims only that he is ignorant of the law and

7   does not have the expertise needed to have discovered the need to file his election in a

8   more timely manner.  <u>See</u> Acar Decl., ¶ 6.  He submits no evidence of reliance on a third

9   party tax professional, of reliance on the IRS, or of reasonable diligence in attempting to

10  discover what the law was, and offers no evidence of intervening events outside his control

11  that could excuse his late filing.  Ignorance of the tax laws, standing alone, is insufficient to

12  warrant the grant of a retroactive extension of time pursuant to T.R. § 301.9100-3.

13         Accordingly, and consistent with the holdings of both <u>Vines</u> and <u>Lehrer</u>, the court

14  concludes that plaintiff has failed to establish the existence of a material disputed fact on

15  the issue whether he qualifies for an extension of time pursuant to T.R. § 301.9100-3.

16         As such, the court GRANTS defendant's motion for summary judgment since, even

17  if plaintiff were to persuasively demonstrate at trial that he was a trader of securities for tax

18  year 1999, he still fails to establish either that he filed a timely election, or that an extension

19  of time should issue.

20         C.    Conclusion

21         Defendant's motion for summary judgment is GRANTED.  This holding disposes of

22  plaintiff's complaint in its entirety.

23  **IT IS SO ORDERED.**

24  Dated: August 16, 2006

25                                              _____
                                                PHYLLIS J. HAMILTON
26                                              United States District Judge

27

28

8